# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

CASE NO.:

JOHN DOE,

      Plaintiff,

vs.

FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES,

      Defendant.

_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JOHN DOE ("Plaintiff"), brings this action for violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), against Florida Gulf Coast University Board of Trustees ("Defendant"), and alleges as follows:

## PRELIMINARY STATEMENT

Title IX of the Education Amendments of 1972 mandates that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiff's rights under Title IX were violated when:

- Defendant did not provide Plaintiff with the complaint against him or any investigative findings whatsoever before finding him responsible for non-consensual sex;

1

- Defendant failed to require the complainant's presence at the administrative hearing and failed to allow Plaintiff to ask questions of the complainant in any way during the hearing;

- Defendant failed to meaningfully investigate the claim at all by failing to interview witnesses or review any physical evidence, and instead simply relied on the differing accounts given by Plaintiff and the complainant; and

- Defendant appointed an investigator and decision-maker to this case that had a prior relationship with Plaintiff's accuser, and who likely encouraged Plaintiff's accuser to make the instant Title IX complaint ten (10) months after the sexual incident in question occurred.

For these reasons, in conjunction with the allegations presented herein, Plaintiff brings the following claims against Defendant.

## PARTIES

1. Plaintiff John Doe is an individual who was formerly a student at Defendant's University, and who, at all times material hereto, was a resident of Lee County, Florida.

2. Defendant is a public university located in Lee County, Florida. Defendant is a part of the State University System of Florida and receives Federal financial assistance.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1681, because this action involves a federal

question under Title IX of the Education Amendments of 1972.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as these claims are related to Plaintiff's federal claim and arises from the same case or controversy as Plaintiff's Title IX claim.

5. This Court has original and personal jurisdiction over this action because Defendant is a part of the State University System of Florida, and the action complained of occurred in Florida.

6. Venue is appropriate in the Fort Myers Division of the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) and the Local Rule for the United States District Court, Middle District of Florida 1.04(b) because Defendant conducted business in Lee County, Florida, and the unlawful conduct occurred within the Fort Myers Division of this Court.

## GENERAL ALLEGATIONS

### I. Relationship between Plaintiff and his accuser

7. Plaintiff and his accuser (hereinafter referred to as "Jane Roe") dated romantically from approximately January 2019 to June 2019.

8. During that time, they were in an exclusive and committed romantic relationship. They met each other's families on numerous occasions and routinely spent time at each other's homes.

9. Plaintiff took Jane Roe to her Senior Prom while they were a romantic couple.

10. During Plaintiff and Jane Roe's relationship, they had consensual sex on a routine basis.

11. After their romantic relationship ended, both Plaintiff and Jane Roe attended Florida Gulf Coast University.

12. On September 11, 2019, Jane Roe reached out to Plaintiff in an effort to reconnect, saying "Hey I know this is really poor timing because it's 3 am but do you think there's ever any chance of us being friends?" *See* Composite Exhibit "A" attached hereto.

13. After some brief conversation over text message, the two agreed that they could be friends.

14. On September 18, 2019, Jane Roe again reached out to Plaintiff, stating:

> **"I'm really high and I'm making like some connection in my head. I don't know I just feel like I'm going through so much that I'm resorting to past friends and things that I used to find comfort in and you being one of those and I just don't want to hurt you again like literally listen I have not gotten over that and like literally the day we met I cried about two seconds after I walked away . . ."** *See* Composite Exhibit "A."

15. On the night of September 21, 2019 and/or the early morning of September 22, 2019, Plaintiff and Jane Roe had consensual sex. In recounting the night, Roe texted Plaintiff and stated "Hopefully things aren't weird, but I mean last night did bring back a few memories," referring to them as "The good times." *See* Composite Exhibit "A."

16. On October 3, 2019, Roe again reached out to Plaintiff, asking if they

4

could talk. Through text message, she stated "I don't know if I ever said this, but I appreciate the good times we had. Not in a 'wish we were together' way but literally like, approaching positive memories and hate to put it like this but thanks for a good run." When Plaintiff responded that he appreciated those times as well, Roe responded "K gonna go cry brb," and asked that Plaintiff call her when he could. *See* Composite Exhibit "A."

## II.     The Day and Night of the Alleged Incident

17.     On October 5, 2019, Plaintiff reached out to Roe asking her if she wanted to meet up that night. She responded, "I'm drinking tonight but maybe after? Like midnight?" *See* Composite Exhibit "A."

18.     Plaintiff texted Roe around 12:21 a.m. on October 6th (i.e. later that night) asking if Roe still wanted to meet up. She responded, "Hey I'm still drinking. 1 p.m." She then said "Come so you can corn." The word "corn" was immediately corrected to "Come." *See* Composite Exhibit "A."

19.     After this exchange, Roe sent several texts asking Plaintiff to pick her up. She texted her location to Plaintiff, directed him to go to the specific building she was located, indicated when she had got there, then asked where he was. *See* Composite Exhibit "A."

20.     In the early morning hours of October 6, 2019, Plaintiff and Roe engaged in consensual sex.

21.     When Plaintiff and Roe woke up later in the morning, they engaged in consensual sex again.

22. Later that day, (still October 6, 2019), Roe texted Plaintiff "was hungry."

### III. Roe's Title IX Complaint

23. Approximately ten (10) months later, Plaintiff was notified that Jane Roe filed a complaint against him under Title IX, claiming that the first occurrence of sexual intercourse they engaged in on October 6, 2019 was non-consensual.

24. In the time between the incident at issue and the filing of Roe's Title IX complaint, she texted Plaintiff frequently. On October 8, 2019 (two days after the alleged non-consensual sex), she texted "I had a dream you had dinner with me and my family. Please exit my mind." *See* Composite Exhibit "A."

25. Plaintiff and Roe also continued to coordinate to meet in person. On October 9, 2019 (three days after the alleged non-consensual sex) Roe texted Plaintiff, "I have a group study w friends for stat at 11. If you're still in the lib around 2 we can link." *See* Composite Exhibit "A."

26. Significantly, on October 11, 2019, Plaintiff texted Roe asking her to come to his apartment to watch a television show. Roe responded, "No way . . . I'm drunk per usual." Plaintiff then asked Roe if she wanted to come over, to which she responded, "I'm too drunk I'm sorry." Plaintiff responded, "all good hahah have fun." *See* Composite Exhibit "A."

27. The two continued to communicate frequently over text message in the following days.

6

28.     On November 24, 2019, Roe texted Paintiff, "Do you have my white scrunchie." Plaintiff did not respond. *See* Composite Exhibit "A."

29.     On December 11, 2019, Roe texted Plaintiff, "are you ok I know juice wrld died." Plaintiff did not respond. *See* Composite Exhibit "A."

30.     On January 24, 2020, Plaintiff received an online message from one of Roe's friends. The message stated that Roe was "suupperrr bummed out you haven't responded to her texts and stuff," and asked that Plaintiff reach out to her. Plaintiff politely declined the request to contact Roe again. *See* Composite Exhibit "A."

31.     On March 12, 2020, Roe again messaged Plaintiff, asking to talk and "hash some stuff out." Plaintiff did not respond. *See* Composite Exhibit "A."

32.     On April 3, 2020, Roe sent Plaintiff a $1.00 payment through an iPhone application, and wrote the meaning for the payment was "For being a fucking loser." Plaintiff returned the dollar, and blocked Roe from making future payments. *See* Composite Exhibit "A."

**IV.     Roe's Title IX Complaint**

33.     On August 7, 2020, Plaintiff received an email from Jessica Homer, Defendant's Senior Deputy Title IX director, indicating that Roe had alleged that their sexual encounter on the night and/or early morning of October 5th and/or 6th, 2019, was without her consent. Roe did not include the sexual encounter with Plaintiff several hours later as part of her Complaint.

34.     The notice indicated that Jessica Homer would be Defendant's

investigator and would make the ultimate determination as to whether Plaintiff engaged in non-consensual sex with Roe.

35. Roe met with Ms. Homer months earlier to discuss another complaint Roe made against a faculty member who she felt touched her inappropriately. Homer's OIEC Investigative Report (attached hereto as Exhibit "B" describes this prior meeting with Roe as follows:

> **In the meeting, the Complainant asked the Assistant Director for advice so that people stopped touching her. Specifically, a faculty member touched her shoulder when he talked to her. She felt like her personal space had been violated, and believed the Assistant Director was assertive and would not let that happen to her. She and the Assistant Director are both short, and they discussed how often that happens to them- pats on the head, shoulder touches, and arm touches are all pretty regular experiences for short people. However, the Complainant was particularly distressed about the incident, so the Assistant Director asked a lot of questions . . .**
>
> **The Assistant Director theorized at the end of the meeting that the Complainant was upset about something entirely unrelated to a professor touching her on the shoulder. As such, during this meeting, the Assistant Director provided the Complainant resources, including her card and the information for the University Victim Advocate.**

36. On August 7, 2020, Plaintiff also received an email from Jessica Homer that included a no-contact order, and a link to Policy 1.006 of Defendant's Policy Manual, which sets out the definition of "consent." In pertinent part, the definition states, "If one of the parties is **incapacitated** (*emphasis added)* due to, among other things, drug or alcohol use, then that

8

person lacks the necessary capacity" to give consent." *See* Exhibit "C" attached hereto.

37. On August 11, 2020, Defendant approved their new Policy 1.015, titled "Sexual Harassment Under Title IX," which corresponded to the new United States Department of Education Rules regarding Title IX investigations. *See* Exhibit "D" attached hereto.

38. This new policy strengthened due process requirements to be used in all proceedings under Title IX at FGCU and other universities around the country.

39. On August 26, 2020, Plaintiff met with Homer to discuss the allegations against him. He was provided a few documents, including a timeline and the text messages between himself and Roe.

40. Plaintiff was never provided with the complaint filed against him, or with any evidence submitted by Roe against him. He was only given a summary of the allegations.

41. During the investigation process, FGCU provided Plaintiff with all pertinent policies and procedures applicable to his case. This included both the "old" policies (those in place prior to August 11, 2020), and the new policies (those that went into effect on August 11, 2020).

42. Under FGCU's revised policy 1.015(E)(9)(b), which became effective August 11, 2020, Plaintiff had a right to inspect the investigative report prior to its completion, and the right to submit a written response within ten (10) days.

*See* Exhibit "D."

43. Plaintiff was never provided the investigative report.

44. Under FGCU's Policy 1.006 (which was in effect both before and after August 11, 2020), the investigation into Roe's allegations was required to be completed within sixty (60) days, unless there were "extenuating circumstances." If such circumstances existed, a notice containing the reasons for the delay was required to be provided to the parties.

45. Defendant did not complete the investigation in this case within sixty (60) days, and did not claim that any extenuating circumstances caused the delay.

46. On November 5, 2020, ninety (90) days into the investigation, Plaintiff emailed Homer requesting an update on the investigation. Homer replied, "I stayed locked in my house to finish your report today . . . I am sorry the process has been so long for you." No other reason or justification was given for the delay.

47. On November 19, 2020, one hundred and four (104) days into the investigation, Plaintiff received Defendant's determination, as made by Homer, finding him responsible for sexual harassment in the form of non-consensual sexual activity.

48. In her determination letter, Ms. Homer does not cite to any evidence whatsoever other than the statements provided by Roe and Plaintiff. No interviews of third party witnesses were conducted (even though others were

present on the night in question), and Homer cited to no physical evidence that was submitted by Roe.

49. Moreover, in the Conclusion section of the letter, Ms. Homer states "The OIEC found sufficient evidence that the Respondent subjected the Complainant to nonconsensual sex because the Complainant was **intoxicated** (*emphasis added)*, and therefore lacked the capacity to consent to sex." *See* the determination letter attached as Exhibit "E" hereto.

50. On November 24, 2020, Plaintiff filed a request for reconsideration, pursuant to Policy 1.006. In the request, he denied making statements attributed to him in the determination letter, and denied that he was "sober" as characterized by Ms. Homer. The evidence presented clearly demonstrated that he was under the influence of marijuana on the night in question.

51. In his request for consideration, Plaintiff also raised the issue that the investigation extended well beyond the prescribed sixty days, without notice of any extenuating circumstances.

52. On December 1, 2020, Vice President Vee Leonard denied Plaintiff's request for reconsideration.

53. Afterwards, Plaintiff was given notice that a hearing would be held, and that April Palmer, Defendant's Assistant Dean, would be his hearing officer.

54. Prior to the hearing, Plaintiff was given no evidence or other documents to review.

55. Under both the old and new FGCU Policy 4.002, Plaintiff should have

11

been afforded the right to cross-question his accuser, albeit with reasonable restrictions, as decided by the hearing officer. If the hearing officer denied Plaintiff the right to cross-question his accuser, the reasons must be provided in writing, or on the record. *See* Exhibit "F" attached hereto.

56. In addition, under the new Policy 4.002 (which went into effect August 11, 2020, months prior to the hearing), if the accusing party chooses not to attend the hearing, the hearing officer is forbidden from relying on statements made by that party in reaching a decision regarding responsibility.

57. On December 16, 2020, a hearing was held over the Zoom platform. The accuser, Jane Roe, did not attend. Plaintiff, his school appointed adviser, and the hearing officer were the only attendees.

58. On December 21, 2020, Palmer issued her Administrative Hearing outcome letter, finding Plaintiff responsible for sexual harassment. In her outcome letter (attached hereto as Exhibit "G"), Palmer states "Based on the information provided in the OIEC report and during the administrative hearing by the respondent, it is more likely than not that the respondent did not receive consent from the complainant and subjected the complainant in non-consensual sex because the complainant was **intoxicated** (*emphasis added)* and the complainant lacked the capacity to consent to sex at the time of the sex act."

59. Plaintiff was issued the following sanctions: (1) an administrative counseling referral; (2) disciplinary probation from April 13, 2021 to December

17, 2021; and (3) suspension from school from December 21, 2020 until April 30, 2021.

60. Plaintiff thereafter filed an appeal, pursuant to Defendant's Code of Conduct. The Dean of the school upheld the suspension and found Plaintiff responsible for sexual harassment.

61. Plaintiff has exhausted his administrative remedies by fully participating in the appeal process, including seeking a Writ of Certiorari in the Circuit Court for the Twentieth Judicial Circuit, Lee County. *See* Case No.: 2021-CA-960.

**COUNT I: VIOATION OF PROCEDURAL DUE PROCESS RIGHTS PURSUANT TO 42 U.S.C. § 1983**

62. Plaintiff restates and incorporates the allegations contained in paragraphs 1-61 above into this Count, as if fully set forth herein.

63. University students have a right to procedural due process in serious school disciplinary proceedings, like suspensions or expulsions. See *Doe v. Ohio State University,* 219 F.Supp.3d 645, 656 (S.D. Ohio 2016) (citing *Goss v. Lopez*, 419 U.S. 565, 576 (1975).

64. Plaintiff was deprived his due process rights when Defendant failed to allow him to cross-question his accuser in any way, and failed to provide Plaintiff any opportunity to confront his accuser in any way.

65. Plaintiff was deprived his due process rights when Defendant failed to conduct and complete its investigation within sixty (60) days, pursuant to

13

Defendant's policies.

66. Last, Plaintiff was deprived his due process rights when Defendant failed to apply the new Title IX policies to his administrative hearing, even though those policies went into effect months before the hearing was held.

67. Defendant's failures were also in violation of their own policies and regulations.

68. Where a disciplinary proceeding depends on "a choice between believing an accuser and an accused . . . cross-examination is not only beneficial, but essential to due process." *Flaim v. Medical College of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005).

69. Due to Defendant's conduct, Plaintiff has suffered damages, including suspension, disciplinary probation (and notes referencing same on his official transcript), lost future earnings and earning capacity, damage to and delays in his pursuit of higher education, and other compensatory damages in amounts to be established at trial.

### COUNT II: VIOLATION OF TITLE IX- 20 U.S.C. § 1681
### (Erroneous Outcome)

70. Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-61 as though fully set forth herein.

71. The facts set forth in the allegations herein cast significant, articulable doubt on the accuracy of the outcome of the disciplinary proceeding against Plaintiff.

72. Defendant came to their decision only after appointing an investigator and decision maker who had a prior relationship with Jane Roe, and who may have encouraged her to make the claim.

73. Defendant's decision was based solely on Roe's word against Plaintiff's. Defendant failed to interview any witnesses, and did not rely on any of the evidence presented regarding the past, long-term romantic relationship between Roe and Plaintiff.

74. Moreover, Defendant failed to rely in any way on the evidence presented by Plaintiff showing that Roe may have filed the complaint in retaliation.

75. At the administrative hearing, Defendant again found for Roe, despite the fact that she did not attend the hearing, did not submit any additional evidence, and that Plaintiff gave exculpatory testimony.

76. Based on Defendant's reliance on Roe's word (and her word alone), and Defendant's disregard of Plaintiff's testimony and evidence, it is clear that Defendant acted with gender bias in coming to their decision against Plaintiff.

77. Due to Defendant's conduct, Plaintiff has suffered damages, including suspension, disciplinary probation (and notes referencing same on his official transcript), lost future earnings and earning capacity, damage to and delays in his pursuit of higher education, and other compensatory damages in amounts to be established at trial.

## COUNT III: BREACH OF CONTRACT

78. Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-61 as though fully set forth herein.

79. By virtue of Plaintiff's enrollment at FGCU, payment of tuition and fees, and attendance, a contractual relationship was created and existed between Plaintiff and Defendant.

80. The terms of the contract between the parties were set forth in the student handbook, and FGCU's policies and procedures, which incorporate the Sexual Misconduct Policy.

81. FGCU violated these policies and procedures in numerous ways, including, without limitation:

   a. Failing to conduct and complete the investigation within sixty (60) days;

   b. Failing to note any "extenuating circumstances" that required them to prolong the investigation beyond sixty (60) days;

   c. Failing to allow Plaintiff to cross-question his accuser in any way;

   d. Failing to provide reasons, in writing, as to why Plaintiff could not cross-question his accuser;

   e. Failing to require attendance of Roe at the administrative hearing; and

   f. Failing to provide Plaintiff a copy of the investigative report in his case.

82. Moreover, Defendant breached their implied covenant of good faith and fair dealing by failing to provide Plaintiff with an investigatory and adjudicatory process that was essentially fair.

83. Defendant breached the implied covenant of good faith and fair dealing by:

   a. Using an investigator and decision maker who had a prior relationship with Roe and who was biased;

   b. Failing to provide Plaintiff his right to cross-question his accuser;

   c. Failing to conduct the investigation within the prescribed time period;

   d. Failing to require Roe's attendance at the administrative hearing; and

   e. Failing to provide Plaintiff with a copy of the investigative report in his case.

84. Due to Defendant's breach, Plaintiff has suffered damages, including suspension, disciplinary probation (and notes referencing same on his official transcript), lost future earnings and earning capacity, damage to and delays in his pursuit of higher education, and other compensatory damages in amounts to be established at trial.

85.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant Florida Gulf Coast University Board of Trustees, awarding:

17

a) Damages in amounts to be established at trial, including, without limitation, reimbursement for all of Plaintiff's tuition and related expenses; damages for deprivation of equal access to the educational benefits and opportunities provided by FGCU; lost future earnings and earning capacity; and damage to and delays in his pursuit of higher education;

b) Pre- and post-judgment interest;

c) Costs;

d) Attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

e) Such other and further relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury at to all matters so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this 6th day of April, 2023, and respectfully submitted by:

> */s/ Nicholas J. Castellano, II*
> Nicholas J. Castellano, II, Esq.
> Florida Bar Number: 0118601
> E-Mail: nick@buckmanandbuckman.com
> **BUCKMAN & BUCKMAN, P.A.**
> 2023 Constitution Blvd.
> Sarasota, FL 34231
> Telephone:  (941) 923-7700
> Fax:            (941) 923-7736
>
> */s/ Kevin M. Griffith*
> Kevin M. Griffith, Esq.
> Florida Bar Number: 0102647
> E-Mail: kgriffith@mcintoshlaw.biz
> **MCINTOSH LAW**

766 Hudson Ave., Suite B
Sarasota, FL 34236
Telephone: (941) 364-8002
Fax: (941) 957-0706

*Attorneys for Plaintiff*