UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN DOE,

    Plaintiff,

v.                                Case No.:  2:23-cv-245-SPC-KCD

FLORIDA GULF COAST
UNIVERSITY BOARD OF
TRUSTEES,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Defendant Florida Gulf Coast University Board of Trustees' ("FGCU") Motion to Dismiss (Doc. 14), and Plaintiff John Doe's Response in Opposition (Doc. 22).  The Court grants in part and denies in part FGCU's motion.

## BACKGROUND

This is a sex discrimination case.  John Doe and Jane Roe attended FGCU, a public university.  In the early morning hours of October 6, 2019, Doe and Roe had sexual intercourse.  About ten months later in August 2020, FGCU's Senior Deputy Title IX Director, Jessica Homer, notified Doe that Roe alleged the sexual encounter was nonconsensual.  Roe said she had been drinking alcohol before she met Doe and thus was too intoxicated to consent to

sex. Homer investigated. She concluded that Roe lacked the capacity to consent because she was intoxicated.

Doe requested reconsideration. FGCU denied Doe's request. FGCU then held a hearing over Zoom, which Roe did not attend. It found Doe responsible for sexual harassment. FGCU issued Doe an administrative counseling referral, and gave him an 8-month disciplinary probation, and a 4-month suspension from school. Doe appealed to the Dean, who upheld the suspension. Doe then sought a Writ of Certiorari in the Circuit Court for the Twentieth Judicial Circuit, Lee County. The complaint is silent about the outcome.

Doe sues claiming FGCU violated his due process rights under 42 U.S.C. § 1983 (Count 1) and Title IX (Count 2), and breached its contract with Doe (Count 3). Doe raises many issues with FGCU's investigation and administrative process: (1) the investigation was not completed in the required time, (2) Homer demonstrated bias against him, (3) Doe never received the complaint or any evidence submitted by Roe, (4) FGCU did not apply new Title IX policies that went into effect during the investigation that would have given Doe the ability to inspect the investigative report and right to submit a written response to it, (5) prior to his hearing, Doe received no evidence or other documents to review, and (6) Doe was not afforded the right to cross examine Roe.

FGCU moves to dismiss. It argues Doe's claims are barred by Eleventh Amendment immunity, res judicata, and collateral estoppel. FGCU further claims Doe failed to plead facts to establish plausible claims. Doe opposes.

## LEGAL STANDARD

"The Eleventh Amendment restricts the judicial power under Article III." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996). So asserting Eleventh Amendment immunity tests subject-matter jurisdiction. *Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998). Rule 12(b)(1) governs motions to dismiss for lack of subject matter. *E.g.*, *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1238 (M.D. Fla. 2019). These challenges take two forms—facial and factual. *Id.* at 1239. On facial attacks (like this one) "the Court takes the allegations in the complaint as true." *Id.*

Motions to dismiss for failure to state a claim follow the familiar 12(b)(6) standard. A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Like under Rule 12(b)(1) facial attacks, courts must accept all

3

factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## DISCUSSION

The Court begins with FGCU's argument the Court lacks subject matter jurisdiction for Doe's § 1983 (Count 1) and breach of contract (Count 3) claims because of Eleventh Amendment sovereign immunity. Then the Court turns to Doe's Title IX erroneous outcome claim (Count 2), which FGCU argues is precluded by res judicata or collateral estoppel and for which Doe failed to state a plausible claim.

**A. Eleventh Amendment Sovereign Immunity (Counts 1 & 3)**

FGCU is correct that the Court lacks subject matter jurisdiction for Doe's § 1983 (Count 1) and breach of contract (Count 3) claims. Florida's Eleventh Amendment sovereign immunity bars these claims.

The Eleventh Amendment grants states immunity from suits by private individuals in federal court unless the state consented to be sued, waived its immunity, or Congress abrogated the states" immunity. *Henry v. Fla. Bar*, 701 F. App'x 878, 880 (11th Cir. 2017). Suits for money damages against a state– Doe's case here—is "the heart of the Eleventh Amendment's concern." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620 (2002). To receive Eleventh Amendment immunity, a defendant "need only be acting as an 'arm

of the state.'" *Henry*, 701 F. App'x at 880 (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc)).

As a preliminary matter, FGCU is an arm of Florida. Doe sues Defendant "Florida Gulf Coast University Board of Trustees," and pleads, "Defendant is a public university…part of the State University System of Florida…" (Doc. 1 at 2). It is well settled that Florida's universities, and their boards of trustees, are arms of the state for purposes of Eleventh Amendment immunity. *E.g.*, *Souto v. Fla. Int'l Univ. Found., Inc.*, 446 F. Supp. 3d 983, 990 (S.D. Fla. Mar. 3, 2020) (collecting cases). So Doe's suit against FGCU is a suit against an arm of Florida—and no party disputes this.

Turning to Doe's § 1983 claim, it is barred under the Eleventh Amendment. Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, and Florida has not waived such immunity in federal civil rights actions. *Henry*, 701 F. App'x at 880-81; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

Doe argues that FGCU is not immune from his § 1983 claim because FGCU receives Title IX funding, and such funding requires a general waiver of Eleventh Amendment immunity. This is wrong. With Title IX, Congress validly abrogated states' immunity *from Title IX suits*. But even states that accept Title IX funding retain immunity from § 1983 claims unless some other exception applies. *See, e.g.*, *Williams v. Bd. of Regents of Univ. Sys. of Georgia*,

5

477 F.3d 1282, 1301 (11th Cir. 2007) (finding Title IX does not abrogate states' immunity from § 1983 and a plaintiff cannot use § 1983 to bring a Title IX claim). So, the Court dismisses Doe's § 1983 (Count 1) claim.

Doe's breach of contract state-law claim fares no better. While Florida has waived its Eleventh Amendment immunity for breach of contract claims in its own state courts, this wavier does not extend to federal court. *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003); *see also Sossamon v. Texas*, 563 U.S. 277, 285 (2011) ("[A] State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court.")

Doe focuses his argument in opposition on the existence of a valid contract between Doe and FGCU. That is not the issue. Even assuming Doe and FGCU have a valid contract, the issue remains whether Doe may sue FGCU for breach of that contract in federal court. He may not—the Eleventh Amendment prohibits it.

Given FGCU's Eleventh Amendment immunity, the Court dismisses Doe's § 1983 (Count 1) and breach of contract (Count 3) claims.

## B. Title IX (Count 2)

FGCU makes two arguments for dismissal of Doe's Title IX erroneous outcome (Count 2) claim. First, FGCU claims Doe's appeal of FGCU's decision to state court triggers res judicata or collateral estoppel, preventing this Court

6

from considering Doe's Title IX claim. Second, FGCU argues Doe fails to state a plausible claim for relief under Title IX. The Court begins where it must—the requirements of a Title IX erroneous outcome claim.

Title IX states, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Doe v. Rollins Coll.*, No. 21-11081, 2023 WL 5199469, at *8 (11th Cir. Aug. 14, 2023) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

At a motion to dismiss stage, courts ask whether the alleged facts, if true, permit a reasonable inference that the university discriminated against Doe based on sex. *Doe v. Samford Univ.*, 29 F.4th 675, 687 (11th Cir. 2022). Specifically for an erroneous outcome claim, a plaintiff must plausibly allege "both that he was innocent and wrongly found to have committed an offense and that there is a causal connection between the flawed outcome and [sex] bias." *Rollins*, 2023 WL 5199469 at *8 (citing *Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018)).

FGCU argues res judicata or collateral estoppel dictates dismissal. After FGCU's final decision, Doe sought a writ of certiorari in the Circuit Court for

the Twentieth Judicial Circuit, Lee County. (Doc. 1 at 61). FGCU attaches Doe's petition for writ of certiorari and the state court's denial to its motion to dismiss.

As a preliminary matter, the Court can consider these attachments at the motion to dismiss stage. Typically, a district court "must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005); *see* Fed. R. Civ. P. 12(d). But an exception exists for documents that are "public records…not subject to reasonable dispute." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (finding district court did not err in taking judicial notice of pleadings and orders in a prior case). Doe's petition for writ of certiorari and the state court's denial are such documents and the Court takes judicial notice of them.

Doe's state court appeal claimed FGCU did not afford him procedural due process and failed to follow the essential requirements of the law. The state court used a three-part standard of review: (1) whether procedural due process was afforded; (2) whether the essential requirements of law were observed; and (3) whether the decision is supported by competent substantial evidence—evidence a reasonable mind would accept as adequate to support a conclusion. (Doc. 14-2 at 5). The state court denied certiorari relief. (Doc. 14-2).

8

The Court now turns to preclusion. "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982). The Eleventh Circuit affords preclusive effects to judicial appeals following state administrative proceedings in accordance with that state's preclusion law. *Carlisle v. Phenix City Bd. of Educ.*, 849 F.2d 1376, 1378 (11th Cir. 1988), certified question answered, 543 So. 2d 194 (Ala. 1989) ("A plaintiff need not seek reversal of an adverse administrative decision through state judicial appeals, but once that course is taken, federal relitigation is foreclosed."). If Florida would grant preclusive effect to the state court judgment and Doe had a full and fair opportunity to litigate his claims in the state proceeding, preclusion applies. *Barrington v. Fla. Dep't of Health,* 112 F. Supp. 2d 1299, 1303 (M.D. Fla. 2000) (citing *Kremer,* 456 U.S. at 463). The movant—FGCU here—bears the burden of proving preclusion applies. *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1076 (11th Cir. 2013).

Under Florida law[1], res judicata applies when there is: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and

---

[1] The parties incorrectly cite some federal preclusion law but the outcome under either federal or Florida preclusion law is the same.

parties to the action; (4) identity of the quality [or capacity] of the persons for or against whom the claim is made; and (5) the original claim was disposed on the merits. *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1074–75 (11th Cir. 2013) (cleaned up). Identity of the cause of action is a question of whether the facts or evidence necessary to maintain the suit are the same. *Id.* Collateral estoppel principles apply to a subsequent proceeding only if: (1) the identical issues were presented in a prior proceeding; (2) there was a full and fair opportunity to litigate the issues in the prior proceeding; (3) the issues in the prior litigation were a critical and necessary part of the prior determination; (4) the parties in the two proceedings were identical; and (5) the issues were actually litigated in the prior proceeding. *Id.* at 1078–79. Collateral estoppel is not res judicata by another name but applies when the two causes of action are different but issues—points and questions—are common to both actions. *Id.* at 1079 (cleaned up).

FGCU rests its argument for preclusion on its assertion that the issues and claim here are identical to those presented in state court. (Doc. 14 at Pg. 13) ("The exact issues and claim that Plaintiff presented to state court forms the crux of Plaintiff's…'erroneous outcome' Title IX claim."). Not so. The crux of Doe's Title IX claim is that FGCU discriminated against him because of his gender. Doe did not raise in state court whether FGCU's decision was based on impermissible gender discrimination nor did the state court address this.

(Doc. 14-1; Doc. 14-2).  It is possible, though perhaps not probable, that the procedural issues Doe complains of were minor enough to accord with due process but, combined with other evidence, could show an impermissible gender bias was a motivating factor in FGCU's decision.  The same is true for the state court's finding that competent substantial evidence supported the agency's decision—assuming there was competent substantial evidence for FGCU's decision, the Court with a Title IX claim could still evaluate whether the reason was that evidence or impermissible discrimination.  *See Floyd v. Amite Cnty. Sch. Dist.*, 495 F. Supp. 2d 619, 627 (S.D. Miss. 2007) (finding legitimate reasons to discharge someone did not necessarily foreclose a discrimination claim because the jury could still find these reasons were pretext and termination would not have occurred absent illegitimate reasons); *see Carlisle,* 849 F.2d at 1379 (finding state court's decision that board had legitimate reasons for transferring school principal would collaterally estop him from asserting there were no legitimate reasons for his transfer but did not estop him from asserting there were illegitimate reasons).  So FGCU has not met its burden to show preclusion bars Doe's Title IX claim.

But the Court agrees with FGCU that Doe's Title IX claim must be dismissed under Fed. R. Civ. P. 12(b)(6).  The alleged facts do not permit a reasonable inference that the university discriminated against Doe based on sex. While the facts taken in the light most favorable to Doe may show he was

11

innocent and wrongly found to have committed an offense, Doe fails to plausibly allege a causal connection between the flawed outcome and gender bias.

Doe's issues with FGCU boil down to: (1) FGCU did not provide him with the complaint or investigative findings; (2) FGCU failed to require Roe's presence at the administrative hearing and thus failed to allow Doe to cross-examine Roe; (3) FGCU failed to meaningfully investigate by failing to interview witnesses or review physical evidence; (4) FGCU's investigator (Homer) had a prior relationship with Roe—she had met with Roe about a prior complaint Roe made against a faculty member—and was thus biased in Roe's favor and against Doe; (5) Homer did not complete the investigative findings report within the required time frame per FGCU's policy (Homer took at least 90 days to investigate rather than within the required 60); and (6) when Doe asked about the delay in investigation Homer failed to provide a reason and told him, "I stayed locked in my house to finish your report today…I am sorry the process has been so long for you."  Also, during FGCU's investigation, its policy "Sexual Harassment Under Title IX" changed.  Doe questions FGCU's failure to apply the new policy to his case.  Applying the new policy would have meant giving Doe access to the investigative report, and not relying on Roe's statements as she did not attend the hearing.  This is not enough for a plausible gender discrimination claim.

12

First, Doe's allegations of procedural insufficiencies fall short. As a preliminary matter, Doe has not raised facts that show FGCU should have applied the new policy to him—he just says they did not. And even if FGCU should have applied the new policy to him, Doe presents no allegations FGCU did not apply the new policy to him, but applied it to women, indicating gender bias.

Further, even if FGCU did deviate from its policies in taking longer than the required time to investigate with no reason, Doe presents nothing tying these deviations to gender bias. "A deviation from a Title IX policy is not, in and of itself, a violation of Title IX." *Doe v. Samford Univ.*, 29 F.4th 675, 688 (11th Cir. 2022). While a deviation from a Title IX policy may be consistent with gender discrimination, "allegations that are merely consistent with liability stop short of the line between possibility and plausibility." *Id.* (citations omitted). The procedural insufficiencies Doe alleges are markedly like those alleged in *Doe v. Samford* ("Samford"), where the Eleventh Circuit affirmed a motion-to-dismiss stage dismissal of a similar Title IX case. 29 F.4th 675 (11th Cir. 2022). As in *Samford*, "Doe's bare assertion that the procedural irregularities are attributable to his sex does not make his speculation plausible." *Id.* at 688-89.

What's more, Doe's allegations about Homer permit obvious alternative explanations that suggest lawful rather than unlawful conduct. *See Doe v.*

13

*Samford Univ.*, 29 F.4th 675, 689 (11th Cir. 2022) (describing how lawful alternative explanations for sex bias include ineptitude, inexperience, and pro-complainant bias). Doe acknowledges Homer met with Roe previously about a different complaint Roe filed against a faculty member and Homer thought from that interaction Roe was upset about something unrelated to the encounter with the faculty member. (Doc. 1 at 35). Homer's previous experience with Roe may have informed her opinion—not sex bias. Even if Homer was biased towards Roe and against Doe, that does not mean it was sex bias. *See Doe v. Samford Univ.*, 29 F.4th 675, 690 (11th Cir. 2022) (finding even a reasonable inference that a decision to suspend Doe was motivated by pro-complainant, anti-respondent bias did not mean it was a sex bias motivation). So the Court dismisses Doe's Title IX claim (Count 2) without prejudice and gives Doe leave to amend.

One final note. Doe moved to proceed anonymously. (Doc. 21). Given the Court's recent decision denying that motion (Doc. 29), Doe must file any amended complaint under his real name.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 14) is **GRANTED in part and DENIED in part**. Plaintiff's Complaint (Doc. 1) is **DISMISSED**.

    a. Counts 1 and 3 are dismissed with prejudice.

14

   b. Count 2 is dismissed without prejudice.

2. Plaintiff may file an amended complaint in compliance with this Order on or before **September 19, 2023**. **Failure to file an amended complaint will result in the Court closing this case without further order/notice**.

**DONE** and **ORDERED** in Fort Myers, Florida on September 8, 2023.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record